UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

JONATHAN HICKS,

                              Plaintiff,                    **ORDER ADOPTING REPORT**
  -against-                                                 **AND RECOMMENDATION__**
                                                                         12−CV−5081 (PKC) (SMG)

THE CITY OF NEW YORK, DETECTIVE
THOMAS WHALAN, DETECTIVE SALVATORE
FORMICA, SERGEANT FABIAN SANCHEZ,
POLICE OFFICER ANDREW BEDELL and
OFFICER JACKIE FARINA, and JOHN DOES A-F,

                              Defendants.

----------------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

       Plaintiff Jonathan Hicks ("Plaintiff") initiated this action on October 10, 2012 against the City of New York and members of the New York City Police Department (collectively, "Defendants"), alleging false arrest and excessive force. (Dkt. 1.) On September 16, 2014, Defendants moved for summary judgment on all claims, and Plaintiff opposed that motion. (Dkts. 43, 51.) This matter was referred to the Honorable Steven M. Gold for a Report and Recommendation ("Report"), pursuant to 28 U.S.C. § 636(b).

       On August 27, 2015, Judge Gold issued the Report, in which he recommended, in sum, that the Court grant summary judgment in Defendants' favor on Plaintiff's false arrest claim, but deny summary judgment on his unlawful entry and excessive force claims. (Dkt. 59 (Report) at 26.) On September 21, 2015, Plaintiff and Defendants both filed objections to the Report. Neither party responded to the other's objections. (Dkts. 61 ("Defs. Obj."), 63 ("Pl. Obj.").)

       For the reasons set forth below, the Court denies both parties' objections and adopts Judge Gold's thorough and well-reasoned Report and Recommendation in its entirety.

## I. STANDARD OF REVIEW

When a party objects to a magistrate judge's report and recommendation, the district court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). However, "[g]eneral or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error." *O'Diah v. Mawhir*, 08 CV 322, 2011 WL 933846, at *1 (N.D.N.Y. Mar. 16, 2011) (citing *Farid v. Bouey,* 554 F. Supp. 2d 301, 306 n.2 (N.D.N.Y. 2008); *Frankel v. City of New York,* 06 CV 5450, 07 CV 3436, 2009 WL 465645, at *2 (S.D.N.Y. Feb. 25, 2009)). "After reviewing the Report [and] Recommendation, the Court may 'accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge . . . . with instructions.'" *Id.* (quoting 28 U.S.C. § 636(b)(1)(C)).

## II. ANALYSIS

### A. Plaintiff's Objections

Plaintiff asks the Court to reject Judge Gold's recommendation to dismiss Plaintiff's false arrest claim, which was based on Judge Gold's finding that probable cause existed for the Defendant-Officers to seize Plaintiff, pursuant to New York Mental Hygiene Law § 9.41. More specifically, Judge Gold found that the 911 calls made by Plaintiff's wife, Adrienne King, and King's subsequent statements to the responding officers "gave rise to probable cause to believe that [P]laintiff posed a danger to [King]." (Report at 10.)

To the extent Plaintiff simply reiterates arguments he made, and Judge Gold considered, as part of summary judgment briefing (*see, e.g.*, Pl. Obj. at 2, 4 (arguing no probable cause because King did not say Plaintiff had subjected her to violence and because Plaintiff and King did not live together)), the Court reviews Judge Gold's resolution of those issues for "clear error", *O'Diah*, 2011 WL 933846, at *1, and finds none.

In any event, applying a de novo review standard, the Court finds that there was probable cause to seize Plaintiff. At the time of Plaintiff's seizure, the Defendant-Officers had ample reason to believe that he posed a danger to King, based on her statements that Plaintiff was violent, bipolar, and intoxicated, that he knew martial arts, that he had threatened King twice that day, and that King was afraid of him. (Report at 3, 10.) In addition, the Defendant-Officers had the opportunity to meet and speak directly with King, who appeared distraught. The officers also reasonably believed that King lived with Plaintiff since she was his wife. The totality of this evidence, all of which was known to the Defendant-Officers, provided probable cause to seize Plaintiff pursuant to Mental Hygiene Law § 9.41. N.Y. MENT HYG § 9.41 (authorizing seizure of a person who is "conducting himself . . . in a manner which is likely to result in serious harm to [himself] or others"); *see Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (probable cause exists "when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime"); *Estate of Heilbut ex rel. Rangel v. City of New York*, 04 CV 4332, 2006 WL 2807722, at *4 (S.D.N.Y. Oct. 2, 2006) (probable cause for involuntary hospitalization may be established based on "information gleaned from [an] informant," such "the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity") (citation and internal marks omitted).

Plaintiff argues that the information known to the Defendant-Officers did not satisfy the standard necessary for involuntary hospitalization under New York Mental Hygiene Law, namely, that the person "manifested homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm." NY MENT HYG § 9.01; (Pl. Obj. at 3.) The Court disagrees. Though King told the responding officers that Plaintiff had never physically hurt her, she reported two prior threats of violence he had made *that* day and her continuing fear of him. King, who appeared to be upset when speaking with the officers, also reported that Plaintiff was violent, bipolar, and intoxicated, and that he knew martial arts. Contrary to Plaintiff's contention, these were not "vague and unspecified allegations of threats[.]" (Pl. Obj. at 4.) Furthermore, that Plaintiff did not react violently when the officers came to his door does not undermine the reports that the officers had received from King, nor negate probable cause. Accordingly, the Defendant-Officers had probable cause to believe that Plaintiff could be subject to involuntary hospitalization.

The Court, therefore, denies Plaintiff's objection to Judge Gold's recommendation that his false arrest claim be dismissed.

**B.  Defendants' Objections**

Defendants object to Judge Gold's recommendation that the summary judgment be denied on the unlawful entry claim. Defendants offer three reasons: (1) Plaintiff never pled an unlawful entry claim; (2) the Defendant-Officers' entry into Plaintiff's apartment was lawful; and (3) the Defendant-Officers are entitled to qualified immunity. (Defs. Obj. at 1.) Though Defendants' arguments are not without merit, the Court denies these objections, and adopts the Report's recommendation to deny summary judgment on this claim.

### 1. Plaintiff's Failure to Plead an Unlawful Entry Claim

It is undisputed that Plaintiff did not explicitly allege an unlawful entry claim in his Complaint, but that Defendants nevertheless addressed this claim as if Plaintiff had made one, in their summary judgment motion. (Report at 13, n.5; Dkt. 46 (Def. Summary Judgment Mem.) at 8 ("Although not specifically plead in the Complaint, to the extent plaintiff is bringing a claim for unlawful entry, such a claim also fails as a matter of law.").) Ironically, having lost that part of its motion, Defendant now argues that there was never a claim to begin with. (Defs. Obj. at 2–3.)

The Court rejects this argument, since it is clear that Defendants were on notice of this potential claim and were not unfairly prejudiced by Plaintiff's failure to articulate it in the Complaint. *See generally* Fed. R. Civ. P. 8; *Isik Jewelry v. Mars Media, Inc.*, 418 F. Supp. 2d 112, 129 (E.D.N.Y. 2005). The fact that Defendants have lost on the "merits" of that claim, at least at the summary judgment phase, does not constitute unfair prejudice.

### 2. The Defendant-Officers' Entry was Lawful

Defendants argue that the same undisputed facts upon which Judge Gold found probable cause to seize Plaintiff justify the Defendant-Officers' warrantless, non-consensual entry into Plaintiff's apartment. (Defs. Obj. at 4 ("in addition to providing a basis for plaintiff to be detained and hospitalized, these facts also justify the entry into the apartment").) The Court disagrees.

Despite reciting the correct legal standard—*i.e.*, "the need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency[,]" *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (citation and internal quotation marks omitted) —Defendants nonetheless argue that "[i]f plaintiff could be detained

5

because he was a danger to another[,] . . . allowing [the officers] to take plaintiff to the hospital for medical assistance, the same facts would justify entering the apartment in order to get plaintiff the aid the officers rightfully believed he needed." (Defs. Obj. at 5.) This argument, however, overlooks the critical differentiating factor: exigency. As Judge Gold explained, while the Defendant-Officers had probable cause to seize Plaintiff as a danger to King, they did not have probable cause to believe that he posed an *imminent* danger to King, since she was outside the apartment with the officers at the time. (Report at 14.) While Defendants argue that the Defendant-Officers reasonably believed that it was necessary to remove Plaintiff so that King could safely return to the apartment, this situation did not necessarily constitute an emergency or exigency that permitted the officers to dispense with the requirements for making a lawful entry, such as getting a warrant or consent.[1] Thus, because there is an issue of fact as to the lawfulness of the Defendant-Officers' entry into Plaintiff's apartment, summary judgment on this claim is denied.

### 3. Qualified Immunity

Defendants argue that the Defendant-Officers are entitled to qualified immunity because based on the facts that supported probable cause to seize Plaintiff, there was "arguable probable cause" to forcibly enter Plaintiff's apartment, in order to seize him. (Defs. Obj. at 7); *see Guerrero v. Scarazzini*, 274 F. App'x 11, 12−13 (2d Cir. 2008) ("an arresting officer will still be entitled to qualified immunity from a suit for damages if he can establish that there was 'arguable

---

[1] Furthermore, the risk of harm that King might have faced upon re-entering Plaintiff's apartment could have been abated or eliminated by other means, such as determining whether King could go elsewhere—which, as it turns out, was a possibility, since King did not live with Plaintiff. While the Defendant-Officers had no duty to assist King in relocating, the existence of alternatives besides removing Plaintiff from the apartment tends to show that King's need to re-enter the apartment did not constitute an emergency that justified the Defendant-Officers' warrantless entry.

6

probable cause' to arrest") (quoting *Escalera v. Lunn,* 361 F.3d 737, 743 (2d Cir. 2004)); *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002). Arguable probable cause exists if "either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Wachtler v. County of Herkimer,* 35 F.3d 77, 80 (2d Cir. 1994) (quoting *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir. 1991)); *see Lennon v. Miller*, 66 F.3d 416, 420−21 (2d Cir. 1995) ("An officer's actions are objectively unreasonable where no officer of reasonable competence could have made the same choice in similar circumstances.")

Defendants seem to argue that although King might not have been in imminent danger, based on all of the other facts—*i.e.*, Plaintiff's bipolar condition, his failure to take his medications, his intoxication, the fact that he had twice threatened King that day—the Defendant-Officers reasonably could have believed that they had probable cause to enter Plaintiff's apartment to "help someone in imminent danger." (Defs. Obj. at 8.) Though Defendants do not identify the "someone", it appears that they are referring to Plaintiff, since he was the only person in the apartment. Defendants also explicitly argue, "[s]imilarly, if the officer was reasonable in believing plaintiff was an [Emotionally Disturbed Person], he or she would be reasonable in believing that there was a basis to enter the apartment to effect hospitalization of plaintiff." (*Id.*) In essence, Defendants are arguing that the risk of harm that Plaintiff posed to himself justified the Defendant-Officers' warrantless entry.

The Court does not find these facts sufficient to establish that the Defendant-Officers reasonably believed that an emergency, *i.e.*, Plaintiff harming himself, existed so as to justify the officers forcing their way into Plaintiff's apartment, especially given King's statements to the officers that Plaintiff had not threatened to hurt himself. Accordingly, because Defendants have

7

failed to demonstrate arguable probable cause, a finding of qualified immunity is not warranted at this time.

## CONCLUSION

Accordingly, for the reasons set forth in the Report, the Court grants summary judgment for Defendants on Plaintiff's false arrest claim, but not on his unlawful entry and excessive force claims, which will proceed to trial. The parties will file their joint pretrial order by November 30, 2015.

SO ORDERED:

/s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: September 30, 2015
       Brooklyn, New York